AO 91 (Rev. 11/11)  Criminal Complaint (Rev. by USAO on 3/12/20)    ☐ Original   ☐ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

Central District of California

| FILED |
| --- |
| CLERK, U.S. DISTRICT COURT |
| 3/30/2022 |
| CENTRAL DISTRICT OF CALIFORNIA |
| BY: ___ ib ___ DEPUTY |

United States of America

v.

LONIE ALFREDO PEREZ,

Defendant,

Case No.    2:22-mj-01287-DUTY

## CRIMINAL COMPLAINT BY TELEPHONE
## OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date of March 29, 2022, in the county of Los Angeles in the Central District of California, the

defendant violated:

| Code Section | Offense Description |
| --- | --- |
| 18 U.S.C. § 922(g)(1) | Felon in Possession of a Firearm |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

_____
/s/ Christopher Harris
*Complainant's signature*

_____
Christopher Harris, FBI Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date:    3/30/2022

_____
*Judge's signature*

City and state:   Los Angeles, California

Hon. Alexander F. MacKinnon, U.S. Mag. Judge
*Printed name and title*

AUSA:  Julia Hu x3802

## AFFIDAVIT

1.  I, Christopher C. Harris, being duly sworn, declare and state as follows:

### PURPOSE OF AFFIDAVIT

2.  This affidavit is made in support of a criminal complaint and arrest warrant against LONIE ALFREDO PEREZ ("PEREZ"), aka "Temper," for a violation of 18 U.S.C. § 922(g)(1): Felon in Possession of a Firearm.

3.  The facts set forth in this affidavit are based upon my personal observations; my training and experience; and information obtained from various law enforcement personnel and witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and arrest warrant and does not purport to set forth all of my knowledge of or investigation into this matter.  Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and part only.

### BACKGROUND OF AFFIANT

4.  I am a Special Agent ("SA") with the Federal Bureau of Investigation ("FBI") and have been so employed since January 2016.  I received basic law enforcement training at the FBI Academy in Quantico, Virginia, from September 2017 to February 2018.  This training included segments on conducting criminal investigations, narcotics identification, firearm crimes, gangs and other law enforcement topics.  I am currently assigned to the Los Angeles Metropolitan Task Force on Violent Gangs (the

"Task Force"), a multi-agency task force led by the FBI, which includes the Los Angeles Police Department ("LAPD"), Drug Enforcement Administration ("DEA"), and the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF").

5.   Prior to becoming an SA, I was employed as a Police Officer for the City of New Orleans from March 2003 to January 2016.  During this time, I served in various roles, including patrol officer, person/property detective, homicide detective, and task force officer with the New Orleans Office of the FBI. During my tenure as a police officer, I investigated violations of both state and federal law, to include gang and narcotics violations.  I have interviewed numerous gang members, narcotics traffickers, cooperating subjects, and confidential human sources.

6.   During my tenure with the FBI, I have participated in numerous investigations of violent crime, drug trafficking organizations, and large-scale street gangs, including criminal enterprise investigations that have involved court-authorized interception of wire, oral, and electronic communications.  I have become familiar with the methods, language, structures, and criminal activities of street gangs and transnational organized crime groups, including MS-13, operating in and through this judicial district.  I have become familiar with the street and leadership level extortion activities of these gangs, as well as their reliance on firearms.  I have become familiar with the types and amount of profit made by drug smugglers and the methods, language, and terms that are used to disguise the

source and nature of the profits from their illegal narcotic dealings.

7.   During the course of my career, I have personally interviewed gang members and narcotics traffickers in gang and narcotics investigations that I have worked.  I have participated in the debriefing of cooperators and confidential human sources who had personal knowledge regarding criminal street gang activity, major narcotics trafficking organizations, and other criminal offenses, including violent crimes.  Through these efforts, I have become very familiar with the methods used by gang members and narcotics traffickers.  Specifically, I have become knowledgeable about the investigative techniques that are useful and viable in certain situations and those that are not. I have also consulted with other investigators who have extensive training and experience in criminal enterprises.

## SUMMARY OF PROBABLE CAUSE

8.   On or about March 29, 2022, law enforcement agents executed a state search warrant at an apartment on Verdugo Road in Los Angeles, California.  After attempting to flee the residence through a window with a shotgun, PEREZ, a documented MS-13 gang member, eventually surrendered to law enforcement.

9.   In PEREZ's bedroom, agents found three firearms: a sawed-off shotgun, bearing serial number 12P18-005469, loaded with a single shotgun shell; a Glock .40 caliber pistol, bearing serial number XNV525; and a 9mm handgun with no serial number (commonly referred to as a "ghost gun"), as well as a suspected

silencer.  Additionally, officers found in PEREZ's room approximately 165 rounds of ammunition and additional magazines.

10.  In a post-arrest Mirandized interview, PEREZ admitted to trying to take the firearms in order to flee the location and attempting to unload the shotgun in order to avoid a more serious criminal charge.

11.  At the time PEREZ possessed the firearms and ammunition, he had previously been convicted of four felony offenses, each punishable by a term of imprisonment exceeding one year, as well as a misdemeanor crime of domestic violence, and was therefore prohibited from possessing firearms and ammunition.  In addition, there was an active probation violation warrant for PEREZ at the time he possessed the firearms and ammunition.

<u>**STATEMENT OF PROBABLE CAUSE**</u>

12.  Based on my review of law enforcement reports, conversations with other law enforcement agents, and my own knowledge of the investigation, I am aware of the following:

**A.   During the Execution of a Search Warrant, Agents Find PEREZ In Possession of Firearms and Ammunition**

13.  On or about February 5, 2022, a shootout involving suspected MS-13 gang members took place near the intersection of Manhattan Place and Melrose Avenue in Los Angeles, California. Suspects involved in the shooting were picked up in a black Scion XB, which is believed to belong to J.R., a suspected MS-13 gang member.

14. Based on surveillance conducted by law enforcement conducted on March 23 and March 24, 2022, it was suspected that J.R. lived in a unit in multi-unit residence located on Verdugo Road in Los Angeles, California (the "Verdugo Road Apartment"). On or about March 25, 2022, LAPD Officer Nicholas Clanton obtained a California state search warrant, issued by Los Angeles Superior Court Judge Teresa Sullivan, for the Verdugo Road Apartment.

15. On or about March 29, 2022, at approximately 7:00 am, Task Force members, including myself, as well as LAPD Hollywood Detectives, executed the search warrant for the Verdugo Road Apartment.

16. LAPD officers knocked and announced at the front door of the Verdugo Road Apartment. A man later identified as C.V. came out of the front door of the apartment. An unknown subject then attempted to exit the apartment from a side window.

17. A man suspected to be PEREZ then attempted to exit a second side window and tried to push a shotgun out of the window. PEREZ went back into the apartment through the window. Subsequently, I heard a shotgun being racked twice.

18. Agents continued to call out to the remaining occupants of the Verdugo Road Apartment to come out of the unit. However, PEREZ and the other remaining occupants refused to follow commands and refused to exit the residence.

19. After a standoff lasting approximately one hour, PEREZ, J.R., and two women, N.P.D. and X.L., eventually came out

of the rear door of the Verdugo Road Apartment.  X.L. is the girlfriend of PEREZ, and N.P.D. is the girlfriend of J.R.

20.  Law enforcement entered the apartment. The apartment had two bedrooms.  One bedroom was identified as belonging to PEREZ and X.L., based on a birth certificate and other documents in PEREZ's name found on a shelf at the head of the bed, as well as statements by the other occupants confirming that the room belonged to PEREZ.  The other bedroom was identified as belonging to J.R. and N.P.D.  C.V. was sleeping in the living room.

21. In PEREZ's bedroom, agents found the following:

a.   On the same shelf as PEREZ's birth certificate and documents, a sawed-off 12-gauge shotgun, bearing serial number 12P18-005469, with an approximately 14 and 3/4-inch barrel.  The shotgun was loaded with one 20-gauge shotgun shell.

b.   On the floor by the window, an additional six rounds of 20-gauge shotgun shells.

c.   Under the bed, a Glock .40 caliber pistol, bearing serial number XNV525.

d.   Under the bed, a 9mm handgun with no serial number (commonly referred to as a "ghost gun").  The handgun contained an extended 9mm magazine that was loaded with eleven rounds of .40 caliber ammunition.

e.   In a white plastic bag near the closet, a suspected silencer.

     f.  A .40 caliber magazine that was loaded with four rounds of .40 ammunition and four rounds of 9mm ammunition, and other unloaded magazines.

     g.  On the floor, three boxes of ammunition:

     i.  One box containing 39 rounds of ACP .45 caliber rounds.

     ii.  One box containing 50 rounds of .45 automatic caliber rounds.

     iii. One box containing 47 rounds of .357 caliber ammunition.

**B.  Post-Arrest Statements by PEREZ**

22. SA Joseph Carelli and I interviewed PEREZ at LAPD - Hollywood Station.  PEREZ was read his Miranda rights and waived those rights in order to speak with the agents.

23. During the interview, PEREZ stated the following:

     a.  PEREZ confirmed that the bedroom in which the firearms and ammunition were located belonged to him.

     b.  According to PEREZ, he took the three firearms in order to try to flee the Verdugo Road Apartment with the guns.

     c.  When it became apparent that he would not be able to flee, PEREZ unloaded the shotgun because he thought that the discovery of rounds in the chamber would result in a more serious criminal charge.

**C.  PEREZ's Criminal History**

24. On March 29, 2022, I reviewed criminal history reports for PEREZ via his National Crime Information Center report. Those showed that, at the time that PEREZ possessed the firearms

and ammunition on March 29, 2022, he had been convicted of the following felony offenses, each punishable by a term of imprisonment exceeding one year:

  a. On or about February 28, 2017, PEREZ was convicted of Vandalism, in violation of California Penal Code § 594(a), and sentenced to three years of probation and 180 days' jail.

  b. On or about July 25, 2018, PEREZ was convicted of Resisting Police Officers, in violation of California Penal Code § 69, and sentenced to sixteen months' imprisonment.

  c. On or about November 20, 2018, PEREZ was convicted of Evading a Police Officer, in violation of California Vehicle Code § 2800.2, and sentenced to sixteen months' imprisonment.

  d. On or about March 10, 2021, PEREZ was convicted of Evading a Police Officer, in violation of California Vehicle Code § 2800.2, and sentenced to formal probation and 180 days' jail.

25. PEREZ also has a misdemeanor conviction from on or about January 14, 2016, for inflicting corporal injury on a spouse, in violation of California Penal Code § 273.5(A), for which he was sentenced to 75 days' jail and 36 months' probation.

26. Additionally, as of March 29, 2022, PEREZ had an active probation violation warrant that was issued on November 15, 2021.

**D.    Interstate Nexus**

27. On or about March 30, 2022, FBI SA Luis Morales, who is a certified interstate nexus examiner, examined the firearms that were seized on March 29, 2022.  Based on his examination, SA Morales determined that the shotgun and Glock pistol found in PEREZ's room were manufactured outside the state of California, and therefore must have travelled in interstate commerce to have been recovered in California.

<u>**CONCLUSION**</u>

28. For the reasons described above, there is probable cause to believe that PEREZ has committed a violation of 18 U.S.C. § 922(g)(1): Felon in Possession of a Firearm.

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this <u>30th</u> day of March, 2022.

_____
HONORABLE ALEXANDER F. MACKINNON
UNITED STATES MAGISTRATE JUDGE